UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY HOWELL, an individual on behalf of herself and others similarly situated,<br><br>                               Plaintiff,<br><br>v.<br><br>ADVANTAGE RN, LLC; and DOES 1 through 10,<br><br>                              Defendants. | Case No.: 17-CV-0883 JLS (BLM)<br><br>**ORDER GRANTING MOTION FOR RULE 23 CLASS CERTIFICATION AND CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION**<br><br>(ECF No. 21) |

Presently before the Court is Plaintiff Emily Howell's Motion for Rule 23 Class Certification and Conditional Certification of an FSLA Collective Action, ("MTN," ECF No. 21-3). Also before the Court is Defendant Advantage RN, LLC's Opposition to the Motion, ("Opp'n," ECF No. 24), and Plaintiff's Reply in Support of the Motion, ("Reply," ECF No. 25).[1] The Court held oral argument on the Motion on July 12, 2018. After considering the Parties' arguments and the law, the Court rules as follows.

---

[1] Plaintiff has also filed evidentiary objections, (ECF Nos. 26, 27), as well as a Notice of Supplemental Authority, (ECF No. 32).

1

# BACKGROUND

Plaintiff brings this action as a Rule 23 class action and a Fair Labor Standards Act ("FLSA") collective action on behalf of employees of Defendant Advantage RN, LLC, a healthcare staffing company. (MTN 7.)[2] Plaintiff brings causes of action under the California Labor Code and the FSLA for unpaid overtime and also brings derivative state law claims. (*Id.*) Plaintiff alleges Defendant has a uniform policy which excludes "the value of two types of remuneration from the 'regular rate' when calculating overtime: per diem stipends and nondiscretionary bonuses." (*Id.*)[3] Plaintiff also brings derivative claims for unlawful business practices and penalties. (*Id.*)

Defendant is a travel nurse staffing company that staffs registered nurses at health care facilities nationwide. ("Answer," ECF No. 15, ¶ 9.) Each employee signs a Traveler Assignment Confirmation, which specifies the details of the assignment and how the employee will be paid. (MTN 10.) "An employee's pay includes hourly wages, a weekly per diem stipend, and monetary bonuses." (*Id.*) If the employee is working a minimum distance from his or her home, he/she are paid a weekly per diem stipend. (*Id.*) The stipend is part of the employee's regular weekly paycheck. Defendant combines the hourly wages and weekly per diem stipend and presents the total as "weekly take home pay." (*Id.* at 11.) If the employee works the minimum "contracted hours," the employee earns the full weekly per diem. (*Id.*)

Plaintiff presents two issues: first, regarding Defendant's calculation of overtime as it relates to per diem stipends. Defendant calculates the amount of per diem stipend earned by the employees based on the amount of time worked. (*Id.*) "To earn the maximum weekly stipend, an employee is required to do nothing more than work their minimum required hours." (*Id.* at 11–12.) In fact, if an employee does not satisfy his or her weekly

---

[2] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.
[3] The "regular rate" at which an employee is employed includes "all remuneration for employment" paid to the employee. 29 U.S.C. § 207(e). As relevant here, excluded from an employee's regular rate are "reasonable payments for traveling expenses . . . incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer." 29 U.S.C. § 207(e)(2).

work requirements, Defendant "charges back a portion of the per diem stipend by assessing a 'Missed Shift Adjustment' or 'MSA.'" (*Id.* at 12.) This charge-back is deducted from the employee's paycheck. (*Id.*)[4]

Plaintiff states because the amount of the weekly stipend is tied to hours worked, instead of expenses actually incurred, the stipend must be included in the "regular rate." (*Id.* at 8 (citing, e.g., Wage & Hour Div., Dep't of Labor, Field Operations Handbook § 32d05a(c) (2016) ("If the amount of per diem or other subsistence payments is based upon and thus varies with the number of hours worked per day or week, such payments are a part of the regular rate in their entirety.")).) Plaintiff states "[d]espite basing the amount of the weekly per diem stipend on the amount of time worked, Advantage RN does not include the value of the per diem stipend in an employee's regular rate of pay for purposes of calculating overtime." (*Id.* at 14.) Plaintiff alleges Defendant's policy is therefore unlawful.

Second, Plaintiff alleges Defendant has a "policy of excluding 'loyalty,' 'extension' and 'completion' bonuses from the calculation of overtime." (*Id.* at 8.)[5] Plaintiff states these bonuses are set by contract and are non-discretionary, and therefore, "must be included in the regular rate" when calculating overtime. (*Id.* (citing, e.g., 29 C.F.R. § 778.211(b) ("In order for a bonus to qualify for exclusion [from the regular rate] as a discretionary bonus . . . the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid.")).)

Plaintiff also asserts state law claims for unlawful business practices (under California Business and Professional Code § 17200) and waiting time penalties (under California Labor Code § 203). (MTN 15.) Going forward, the Court will refer to Plaintiff's

---

[4] Plaintiff states that Defendant changed its MSA formula after this lawsuit was filed, but, under the new formula, "the amount of the weekly per diem stipend is still based on time worked, as opposed to expenses incurred." (MTN 13.)

[5] An "extension" bonus is paid for extending an assignment. A "loyalty" bonus is paid for returning for a new assignment. A "completion" bonus is paid for completing an assignment. (MTN 14.)

claims as the "per diem claim," the "bonus claim," and the "derivative state claims."

## LEGAL STANDARD

Motions for class certification proceed under Rule 23(a) of the Federal Rules of Civil Procedure. Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation"). Fed. R. Civ. P. 23(a).

A proposed class must also satisfy one of the subdivisions of Rule 23(b). Here, Plaintiff seeks to proceed under Rule 23(b)(3), which requires that "the court find[ ] that the [common questions] predominate over any questions affecting only individual members ['predominance'], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ['superiority']." The relevant factors in this inquiry include the class members' interest in individually controlling the litigation, other litigation already commenced, the desirability (or not) of consolidating the litigation in this forum, and manageability. *Id.* 23(b)(3)(A)–(D).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotations omitted). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). However, a weighing of competing evidence is inappropriate at this stage of the

litigation. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 605 (C.D. Cal. 2005).

# ANALYSIS

Plaintiff asks the Court to certify the following class:

> All non-exempt hourly health care professionals employed by Advantage RN in California from May 2, 2013 through the date of class certification who worked pursuant to a Traveler Assignment Confirmation, worked overtime, and had the value of the per diem stipend and/or loyalty, extension or completion bonus paid to them excluded from their regular rate for purposes of calculating overtime.

(MTN 15.)

Defendant's challenges to the proposed certification go only to the adequacy of representation requirement and the predominance requirement. (Opp'n 8, 15.) In broad summary, Defendant argues if the Court were to certify the class, then the vast majority of class would end up losing money. The per diems paid to the class members are treated as nontaxable expense reimbursement. Plaintiff contends the per diems are wages. Defendant states if the per diem stipends are included in the employees' regular rate of pay as wages, the IRS will determine the per diems are to be included in taxable income. This will result in most class members having to pay back taxes on the per diems, and the back taxes will be greater than any overtime funds that class members will receive. In sum, class members will "owe more in back taxes than they will win in back wages and penalties." (*Id.* at 9.)

The Court analyzes each requirement in turn but will focus especially on the issues contested by Defendant. Before delving into the merits, the Court addresses Plaintiff's evidentiary objections. Defendant has included two declarations to support its argument, one by Mr. Robert Wood and one by Mr. Robert Crandall. Plaintiff objects to various portions of both. (ECF Nos. 26, 27.)

## I. Evidentiary Objections

Defendant attached a declaration by Mr. Wood, a certified specialist in taxation, and one by Mr. Crandall, who has conducted a labor study and economic analysis. Plaintiff

objects to various portions of the declarations, arguing many of Mr. Wood and Mr. Crandall's opinions "are inadmissible speculation, hearsay, and legal conclusions." (ECF No. 26, at 2; ECF No. 27, at 2.)

Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. *See Eisen*, 417 U.S. at 178 (The class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials"). At the class certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008)). Therefore, the Court may consider inadmissible evidence at this stage. *Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]." *Alonzo,* 275 F.R.D. at 519; *Waine–Golston v. Time Warner Entm't–Advance/New House P'ship*, No. 11cv1057-GPB (RBB), 2012 WL 6591610, at *9 (S.D. Cal. Dec. 18, 2012). Accordingly, the Court **OVERRULES** Plaintiff's evidentiary objections.

## II. Rule 23(a) Requirements

### A. Numerosity

"[A] proposed class must be 'so numerous that joinder of all members is impracticable.'" *Rannis v. Recchia*, 380 Fed. App'x. 646, 650 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). While "[t]he numerosity requirement is not tied to any fixed numerical threshold[,] . . . [i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Id.* at 651.

Plaintiff claims "the proposed class contains well in excess of 100 individuals." (MTN 16.) The Court finds the number of members is sufficiently numerous that joinder is impracticable, and finds this requirement is fulfilled.

///

6

17-CV-0883 JLS (BLM)

### B. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). However, the common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiff asserts classwide liability hinges on the answer to the question: "does the challenged policy of excluding per diem stipends and bonuses from the calculation of overtime comply with applicable law?" (MTN 9.) As to the per diem claim, Plaintiff claims Defendant "underpaid overtime to employees pursuant to its policy of excluding the value of two types of remuneration from the "regular rate" when calculating overtime: per diem stipends and nondiscretionary bonuses." (*Id.* at 17.) The question is whether Defendant implemented a policy to this effect, (*id.* at 18), and whether legally, "per diem benefits must be included in the 'regular rate' when they are tied to time worked." (*Id.* at 21.) As to the bonuses claim, a common question is whether bonuses must be included in the regular rate and whether Defendant excluded them from the regular rate. (*Id.*)

As to the derivative state law claims, Plaintiff asserts the claims for unlawful business practices and waiting time penalties hinge on the same common factual and legal issues as the per diem claim. (*Id.* at 23.) Plaintiff asserts "whether Advantage RN intentionally adopted the challenged policies can be resolved through common evidence." (*Id.* at 24.)

There exists at least one common question as to each of Plaintiff's claims, and the Court finds the commonality requirement is satisfied.

/ / /

*C. Typicality*

The Ninth Circuit has explained, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1019.

Plaintiff Howell "worked multiple assignments for Advantage RN in California as a travel nurse [and] worked these assignments pursuant to Assignment Confirmations that provided for a per diem stipend and missed shift adjustments if she failed to work her 'contracted hours' each week." (MTN 25.) Plaintiff Howell earned bonuses. Plaintiff Howell worked overtime, and "the value of her per diem stipends and bonuses were excluded from the "regular rate" used to calculate her overtime pay." (*Id.*) The Court finds that Plaintiff's claims are typical of the class.

*D. Adequate Representation*

Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "To determine whether the representation meets this standard, [courts] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

Plaintiff asserts "neither counsel nor the named Plaintiff has any actual conflicts with other class members." (MTN 26.) Defendant adamantly disagrees.

*1. Defendant's Argument*

In sum, Defendant argues that there is a "real probability" that, if certified, this lawsuit would negatively affect the economic interests of the putative class, and will only benefit class counsel; thus, a conflict exists. (Opp'n 16.) Defendant argues that Plaintiff ignores the consequence of her request: "*per diem* payments will be taxable, resulting in net economic loss for the Rule 23 class and FLSA collective." (*Id.* at 7.) Defendant agrees it treats the per diem payments as "nontaxable expense reimbursement under the Internal Revenue Code's 'Accountable Plan'" regulations, 29 C.F.R. § 1.62-2." (*Id.* at 9.) If

Plaintiff prevails, the per diems will be included as taxable income. Class members will then owe back taxes on this income. Defendant states 99% of the FSLA class will lose money, 1 out of every 5 members will stand to lose more than $10,000, and only 1 out of every 160 members stands to gain anything, and none of them more than $1,000. (*Id.* at 12.) Similarly, at least 2/3 of the Rule 23 class will lose money. Defendant argues that while the class members will lose, class counsel will win, and this creates a conflict of interest that "goes far beyond the adequacy requirement of Rule 23." (*Id.* at 15.)

In his declaration, Mr. Wood states the class members currently "receive their per diem stipends under an accountable plan" and therefore "do not pay taxes on the per diem stipends." ("Wood Decl.," ECF No. 24-1, ¶ 19.)[6] In contrast, amounts received outside an accountable plan are taxable wages. (*Id.* ¶ 11.) If this Court were to determine that the per diem stipend is includable in an employee's regular rate of pay for purposes of calculating overtime pay under the FSLA, then the IRS will conclude the entire per diem stipends are taxable as wages. (*Id.* ¶¶ 9, 28; *see id.* ¶ 20 (the IRS is "practically certain to treat the per diem payments as taxable wages, and assess back taxes on the per diems.").) This will result in class members "los[ing] money on an after-tax basis." (*Id.* ¶ 38.)

In Mr. Crandall's declaration, he gives an example: Nurse has $35,000 in wages and takes the standard deduction; she is in the 15% tax bracket and pays $4,783 in federal income taxes. If per diems were considered wages, she would have $70,000 in wages; she would then be in the 25% bracket and would owe $13,728 in federal income taxes. She would also owe an additional Medicare payroll tax of 7.65% on the incremental per diem of $35,000, which equates to $2,677.50. ("Crandall Decl.," ECF No. 24-1, ¶ 12.)[7] Mr. Crandall does not specify how much this hypothetical nurse will be owed in overtime and double time, but concludes that Nurse's additional taxes owed is greater than the overtime and double time she will receive. (*Id.* ¶¶ 12–13.) Mr. Crandall has also considered the

---

[6] Mr. Wood's declaration begins on page 34 of ECF No. 24-1.
[7] Mr. Crandall's declaration begins on page 248 of ECF No. 24-1.

class members' potential receipt of liquidated damages and waiting time penalties. He states that 95% of the class will still lose money even when considering the receipt of these funds. (*Id.* ¶ 20 (using hypothetical calculations).)

Similarly, as to Ms. Howell, Mr. Crandall states:

> Consider the week paid on April 8, 2016, when Ms. Howell received $1,072 in per diems and $964.68 in wages while working for 24 regular hours and 12 overtime hours that were paid at time and a half. As a result, she had an effective hourly per diem rate of $29.78, which, when paid over the 36 overtime hours at the time and a half rate, would lead to her receiving an additional $178.68 in overtime if her per diems were reclassified as wages. However, converting the per diems to wages means that Ms. Howell would now also owe state and federal income tax and payroll taxes on $1,250 (her per diem plus the new wages received). At the 25% tax bracket, Ms. Howell's federal income taxes alone would amount to $312.50, more than the additional overtime she received. However, Ms. Howell would also be required to pay the payroll tax of 7.65%, which corresponds to an additional $95.63 in taxes, leaving her at a net loss of $229.45 for the week before considering California State income taxes.

(*Id.* ¶ 14.) Defendant extrapolates the above calculations across the entire putative class and argues a conflict exists because class counsel will receive money and the class will lose money.

### 2. Plaintiff's Reply

In reply, Plaintiff cites to *Clarke v. AMN Services, LLC*, No. 2:16-cv-4132, from the Central District of California. There, the court rejected similar arguments and granted class and collective certification. (Reply 2.) This order by the district court was appealed by the defendant, wherein Advantage RN (Defendant here) filed an amicus brief "asserting the same tax conflict arguments presented here," (*id.*), and the Ninth Circuit denied the petition for permission to appeal the district court's order. *See Clarke v. AMN Servs., LLC*, No. 17-80216, 2018 U.S. App. LEXIS 2009 (9th Cir. Jan 25, 2018). Plaintiff argues there is no conflict that bars certification and the court cannot decline to certify a class "on the basis of a mere potentiality that may or may not be realized." (Reply 3 (quoting *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v.*

*ConocoPhillips Co.*, 593 F.3d 802, 809–10 (9th Cir. 2010)).)

Plaintiff also argues there is no evidence the class members disagree, i.e., that the class members have differing opinions as to whether their overtime pay should be deemed wages. (*Id.* at 7.) Plaintiff cites to cases where other courts have held if class members wish to maintain the alleged illegal conduct, this is not a conflict with the class representative. (*Id.* at 7–8); *see, e.g.*, *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) ("[A]n interest by certain putative class members in maintaining the allegedly unlawful [tip pooling] policy is not a reason to deny certification."). Plaintiff points to *Laumann v. NHL*, 105 F. Supp. 3d 384 (S.D.N.Y. 2015) where Judge Scheindlin gave a clear example regarding an allegation by class members of illegal conduct. If a company is paying its employees $2 less than minimum wage and the employees seek to certify a class against the company, the company will argue if it is required to pay all employees minimum wage, it will be forced to lay off 25% of the employees. The company will argue that the workers would prefer to avoid this result. But, the court held, to deny certification based on this would "allow[] defendants to invoke the positive effects of their illegal conduct to fend off liability." *Laumann*, 105 F. Supp. 3d at 406. In sum, "certification is warranted." *Id.*

### 3. Analysis

Indeed, a class cannot be certified if a conflict exists that is "fundamental to the suit and go[es] to the heart of the litigation." 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012). "A conflict is 'fundamental' when it goes to the specific issues in controversy, or where, . . . some plaintiffs claim to have been harmed by the same conduct that benefitted other members of the class." *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp., L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007). In contrast, "[c]onflicts that are "merely speculative or hypothetical will not affect the adequacy inquiry." Newberg, § 3:58 (citing, e.g., *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.6 (9th Cir. 2009)).

Here, unlike many of the cases Defendant cited, (Opp'n 16–17), there is no

allegation that the named representative will end up with a different result than the class members, i.e., that Defendant's conduct harmed some class members and benefitted others. Plaintiff alleges that Defendant's policy as a whole is unlawful and was applied uniformly to the class members. Class representative Ms. Howell alleges to possess the same injury as the class members—being subjected to an unlawful policy while employed by Defendant. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (to adequately represent the proposed class, plaintiff "must be part of the class and 'possess the same interest and suffer the same injury' as the class members"). Her interest is in determining whether Defendant is employing an unlawful policy. *See* Newberg § 3.30 ("[T]he class member who wishes to remain a victim of unlawful conduct does not have a legally cognizable conflict with the class representative."). Ms. Howell is therefore an adequate representative.[8]

Defendant's main argument is that class counsel is inadequate and "may have breached their fiduciary duties to the class" because the vast majority of the class, including Ms. Howell, will lose money, if they win this lawsuit. (Opp'n 17.) The Court finds this conflict to be speculative and not fundamental. Although *Clarke* is distinguishable in many regards, its reasoning is applicable. There, the defendant there had made a similar argument that class members would stand to lose money as a result of certification. The

---

[8] Defendant also argues Ms. Howell "does not possess sufficient information to enable her to discharge [her] fiduciary duties to the putative class." (Opp'n 20.) Defendant deposed Ms. Howell and she testified she "won't be seeking something that doesn't benefit the entire class," (ECF No. 24-1, at 25), does not know "whether the per diems would be taxed," (*id.* at 27–28), and does not believe it is fair "if class members would be financially harmed by this lawsuit," (*id.* at 31.)

A class representative should be aware of the basic facts underlying a suit but "need not have first hand knowledge of all of the details of his or her suit." *Williams Corp. v. Kaiser Sand & Gravel Co., Inc.*, 146 F.R.D. 185, 188 (N.D. Cal. 1992); *see also Aguayo v. U.S. Bank*, No. 08-CV-2139 W (LSP), 2015 WL 13344755, at *4 (S.D. Cal. Jan. 15, 2015) (holding "the named plaintiff's knowledge of the case does not have to be significant"); *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) ("Courts have developed a standard of 'striking unfamiliarity' to assess a representative's adequacy in policing the prosecution of his or her lawsuit. [Citation omitted.]"). The Court finds that Ms. Howell's lack of research into the taxability of the payments does not render her an inadequate representative. She is clearly aware of the basis of the suit and the policies at issue.

court stated it "sees no reason to believe that proposed class counsel has not considered the matter and believes that the claims in this case have little to no bearing on the tax treatment of the per diems." (ECF No. 25-1, at 8.) "Ultimately, it comes down to counsel's professional judgment regarding what is best for the client after considering the likely magnitude of the positives and negatives, the likelihood of each occurring, and the strength of the connection between the two results." (*Id.*)

The same is true here; the Court trusts that class counsel seeks to represent a class that it believes will gain, not lose. Defendant has produced no evidence that the class members oppose certification. *See Cummings*, 316 F.3d at 886 (affirming a grant of class certification when defendant "produced no evidence that class members actually possess opposing views regarding the pursuit of the punitive remedy"). Finally, even if it is proven to be true that class counsel will come away with more money than the class members,[9] Defendant has produced no support for their argument that this is deemed a conflict, let alone a fundamental conflict.

This is true regardless of the legality of Defendant's policies. Defendant argues that its per diems are properly excluded from the regular rate because they were reasonable payments for expenses. (Opp'n 21.) The issue of the lawfulness of a policy "is appropriately made at trial or at the summary judgment stage, as it goes to the merits of the plaintiffs' claim." *Jiminez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 n.5 (9th Cir. 2014); *see In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013) (noting that if a defendant has a strong argument against classwide liability, it "should welcome class certification" as that allows it the opportunity to resolve claims of all class members at once).

In sum, the Court finds Plaintiff has met her burden in proving adequacy.

---

[9] It is unclear to the Court how and to what extent Defendant and its experts considered the bonus claim in their calculations. Although Defendant argues that the back taxes on the per diems will exceed any extra overtime that class members will receive, Defendant does not appear to have addressed how the alleged increase in overtime due to the bonuses will impact these figures. This bolsters the Court's finding that the conflict as alleged is only speculative.

## III. Rule 23(b)(3) Requirements

Rule 23(b)(3) states that a class may be maintained if the requirements of Rule 23(a) are fulfilled and if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A. *Predominance of Common Issues*

Plaintiff asserts for the per diem claim, liability depends on "the common questions of (1) whether Advantage RN adopted a policy of excluding the weekly stipend from the 'regular rate' when calculating overtime, despite basing the amount of this stipend on the amount of time worked each week, and (2) whether this policy violates California law." (MTN 26–27). As to the bonus claim, liability depends on "the common questions of (1) whether Advantage RN adopted a policy of excluding 'loyalty,' 'extension,' and 'completion' bonuses from the 'regular rate' when calculating overtime, despite guaranteeing the amount of and right to earn each bonus by contract, and (2) whether this policy and practice violates California law." (*Id.* at 27.)

Defendant argues Plaintiff's claim "presents an inherently-individual issue for resolution" because "the court will [need to] measure the reasonableness of the employer's per diem policy on an employee by employee basis to see if the amount paid reasonably approximates each individual employee's excludable expenses." (Opp'n 8 (quoting *Picton v. Excel Grp., Inc.*, 192 F. Supp. 2d 706, 712 (E.D. Tex. 2001)).) Plaintiff states it is not challenging whether the per diem amounts are reasonable, but argues that the per diems overall constitute compensation not reimbursements. (Reply 10.) "This is because—reasonable or not—no payment may be excluded from the regular rate when it is 'compensation for performing work.'" (*Id.* at 11 (quoting *Flores v. City of San Gabriel*, 824 F.3d 890, 899 (9th Cir. 2016)).) The Court agrees with Plaintiff; the Court will not be evaluating the policy as it relates to each person, but will be evaluating the policy as a whole.

Defendant also argues there will need to be an "analysis of the '*substance* of a purported per diem payment,' and whether 'it [was] actually used to offset expenses an employee incurs due to time spent away on the employer's business." (Opp'n 22 (emphasis added by Defendant) (quoting *Newman v. Advance Tech. Innovation Corp*, 749 F.3d 33, 39 (1st Cir. 2014).) Defendant states this will involve an inquiry into each adjustment made to each class member's per diem amounts and an assessment of each member's actual expenses. (*Id.* at 23.) However, to the extent that these questions would require individual inquiry, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)). Plaintiff has alleged that class members' damages all result from Defendant's unlawful policy. The fact that these damages may need to be calculated does not mean that certification is inappropriate.

The Court finds that Plaintiff has proven that common issues predominate.

### B. Superiority

The final requirement for class certification is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). "In determining superiority, courts must consider the four factors of Rule 23(b)(3)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). The Rule 23(b)(3) factors are:

> (A) [T]he class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The superiority inquiry focuses "on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (internal quotation marks omitted). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Defendant does not contest that the class action is superior to other methods, and the Court finds that the superiority requirement is met.

### IV. Conclusion as to Certification of the Class Under Rule 23

The Court **GRANTS** Plaintiff's Motion to Certify the Class Under Rule 23.

### V. Conditional Certification as Collective Action Under the FLSA

Plaintiff also seeks conditional certification of the following collective:

> All non-exempt hourly health care professionals employed by Defendant Advantage RN LLC in the United States within three years prior to the date of certification who worked pursuant to a Traveler Assignment Confirmation, worked in excess of 40 hours in one or more workweeks, and had the value of the per diem stipend and/or loyalty, extension or completion bonus paid to them excluded from their regular rate for purposes of calculating overtime.

(MTN 28.)

#### A. Legal Standard

The FLSA provides a right of action to an employee against his employer when the employer fails to pay overtime wages. 29 U.S.C. §§ 203, 207. An employee may bring a collective FLSA action on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000). To facilitate this process, a district court may authorize the named plaintiffs to send notice to all potential plaintiffs and set a deadline for those plaintiffs to join the suit. *Advanced Textile Corp.*, 214 F.3d at 1064 (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 172 (1989)). Potential plaintiffs are required to opt-in to the suit by filing a consent in writing with the court. 29 U.S.C. § 216(b).

The district court has discretion in determining whether a collective action is appropriate: that is, whether plaintiff and the proposed collective action group are "similarly situated." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). Section 216(b) does not define "similarly situated" and the Ninth Circuit has not defined the term in the FLSA context. *Id.* However, in making this determination, "[c]ourts generally follow one of two approaches: (1) evaluating the FLSA collective

action in terms of Rule 23's class certification requirements; or (2) applying a two-step approach involving initial notice to prospective plaintiffs followed by a final evaluation [of] whether such plaintiffs are similarly situated." *Id.* (citing *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001)). The majority of courts follow the second approach. *Id.*; *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002).

Under this two-tiered approach, a court must first decide whether the potential class should be given notice of the action. *Wynn*, 234 F. Supp. 2d at 1082. Because a court generally has a limited amount of evidence at its disposal, the initial determination is made under a fairly lenient standard and typically results in conditional class certification. *Id.* Conditional certification is appropriate where "plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan, or decision." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530 (N.D. Cal. 2007) (citing *Leuthold*, 224 F.R.D. at 468).

### *B. Analysis*

As an initial matter, the Court adopts the two-step approach used by a majority of California courts. Plaintiff bears the burden of showing that members of the proposed class are similarly situated. *Graham v. Overland Sols., Inc.*, No. 10-CV-672 BEN (BLM), WL 1769737, at *2 (S.D. Cal. May 9, 2011). At this stage, a plaintiff "need only provide substantial allegations, supported by declarations or discovery, that [the] claims arise out of a common decision, policy or plan that leads to FLSA violations." *Kellgren v. Petco Animal Supplies, Inc.*, No. 13cv644 L(KSC), 2015 WL 5167155, at *2 (S.D. Cal. Sept. 3, 2015) (citing cases). Generally, an allegation of an "overarching policy" is sufficient. *Id.* (quoting *Smith v. Micron Elecs., Inc.*, No. CV-01-244-S-BLW, 2005 WL 5336571, at *2 (D. Idaho Feb. 4, 2005)).

Plaintiff alleges that she and the collective were subject to common unlawful policies excluding the value of the per diem stipend and bonuses. (MTN 30.) Plaintiff alleges the policies at issue are nationwide and therefore Plaintiff and the collective were all subject

17

to the same policies. (*Id.* at 30–31.) Defendant argues the travel nurses are not "similarly situated" to one another within the meaning of the FSLA. (Opp'n 8.) As it did in opposition to the Rule 23 class, Defendant argues that there are individualized issues regarding reimbursement of the collective. (*Id.*) Defendant also argues Plaintiff's claims require "individualized determinations of liability." (*Id.* at 21.)

The Court disagrees with Defendant; Plaintiff has alleged she and the collective are subject to the same policies, and determining the legality of this policy will not involve individualized determinations. There is no evidence that the policies were applied differently to different nurses. Thus, Plaintiff has demonstrated that she and the collective are similarly situated. The Court **GRANTS** Plaintiff's Motion to conditionally certify the collective.

### III. Notice

Where a class has been certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice required for Rule 23(b)(3) classes must state "clearly and concisely . . . in plain, easily understood language:" (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Rule 23(b)(3) class members "have the right to intelligently and individually choose whether to continue in a suit as class members." *Hanlon*, 150 F.3d at 1024 (citing *Eisen*, 417 U.S. at 173–77).

Plaintiff has included a proposed Notice of Certification that she intends to disseminate to the Rule 23 class, (ECF No. 21-1), and a Notice of Right to Join Nationwide Overtime Lawsuit, (ECF No. 21-2), which she intends to disseminate to the FSLA collective. Defendant has objected to the proposed notices because they "contain

absolutely nothing about tax consequences in any form." (Opp'n 20 n.4 (citing Certification Notice, Manual for Complex Litigation § 21.311 (4th ed.) (notice in Rule 23(b)(3) actions should "describe succinctly the positions of the parties; identify the opposing parties, class representatives, and counsel; describe the relief sought; and explain any risks and benefits of retaining class membership and opting out, while emphasizing that the court has not ruled on the merits of any claims or defenses")).) Plaintiff has not responded to this objection. The Parties **SHALL CONFER** and, within ten days from the date this Order is electronically docketed, either (1) submit joint proposed Notices to the Court, or, if they cannot do so, (2) Defendant shall submit a statement which it believes should be included in the Notices.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion.[10] The Court certifies Plaintiff's class as follows:

> All non-exempt hourly health care professionals employed by Advantage RN in California from May 2, 2013 through the date of class certification who worked pursuant to a Traveler Assignment Confirmation, worked overtime, and had the value of the per diem stipend and/or loyalty, extension or completion bonus paid to them excluded from their regular rate for purposes of calculating overtime.

The Court conditionally certifies Plaintiff's FSLA collective as:

> All non-exempt hourly health care professionals employed by Defendant Advantage RN LLC in the United States within three years prior to the date of certification who worked pursuant to a Traveler Assignment Confirmation, worked in excess of 40 hours in one or more workweeks, and had the value of the per diem stipend and/or loyalty, extension or completion bonus paid to

---

[10] The Court recognizes that Rule 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court. *See Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001). If later evidence disproves Plaintiff's contentions, this Court could modify the class, decertify the class, or use a variety of management devices. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.").

them excluded from their regular rate for purposes of calculating overtime.

Additionally, the Court **APPOINTS** Plaintiff Emily Howell as the class representative and Plaintiff's counsel Matthew B. Hayes and Hayes Pawlenko LLP as class counsel.

**IT IS SO ORDERED.**

Dated: July 17, 2018

Hon. Janis L. Sammartino
United States District Judge