UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY HOWELL, an individual on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>ADVANTAGE RN, LLC; and DOES 1 through 10,<br><br>        Defendants. | Case No.: 17-CV-883 JLS (BLM)<br><br>**ORDER: (1) DENYING DEFENDANT'S MOTION TO MODIFY THE END OF THE CLASS PERIOD, (2) DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(ECF Nos. 54, 56, 63) |

Presently before the Court are Defendant Advantage RN, LLC's Motions for an Order (1) Modifying the End of the Class Period to Reflect the Date Defendant Ceased Operations and (2) Permitting Defendant to Provide Notice to Individuals Erroneously Notified of Class and Collective Actions ("Mot. to Modify," ECF No. 54) and for Partial Summary Judgment ("Def.'s MSJ," ECF No. 56) and Plaintiff Emily Howell's Motion for Partial Summary Judgment as to Liability Only ("Pl.'s MSJ," ECF No. 63). Also before the Court are Plaintiff's oppositions to Defendant's Motions to Modify ("Modify Opp'n," ECF No. 65) and for Summary Judgment ("Pl.'s MSJ Opp'n," ECF No. 66) and

Defendant's opposition to Plaintiff's Motion for Summary Judgment ("Def.'s MSJ Opp'n," ECF No. 69), as well as Defendant's replies in support of its Motions to Modify ("Modify Reply," ECF No. 70) and for Summary Judgment ("Def.'s MSJ Reply," ECF No. 69) and Plaintiff's reply in support of its Motion for Summary Judgment ("Pl.'s MSJ Reply," ECF No. 71). The Court heard oral argument on July 18, 2019. *See* ECF No. 77. Having carefully considered the Parties' arguments, the law, and the evidence, the Court **DENIES** Defendant's Motion to Modify, **DENIES** Defendant's Motion for Summary Judgment, and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment as follows.

## BACKGROUND

### I. Undisputed Facts

#### A. *Defendant and Employment with Defendant*

Defendant is a health care staffing company that placed nurses and other medical professionals ("Travelers") on temporary assignments at hospitals and other health care facilities across the country.[1] ECF No. 71-1 at 1–25 ("Def.'s Facts") ¶ 1.

Before a Traveler began a specific travel assignment with Advantage RN, he or she signed a Travel Assignment Confirmation. Def.'s Facts ¶ 2. The Travel Assignment Confirmation set forth the terms and conditions of a Traveler's assignment, including its location, length, start and end dates, minimum required weekly hours, and hourly rates. *Id.* ¶ 3.

Most travel assignments were thirteen weeks long, *id.* ¶ 7, and most Travelers were contracted to work three twelve-hour shifts per week. *Id.* ¶ 8. The minimum required weekly hours was either 36 or 40 hours per week, depending on the hospital. ECF No. 68-1 at 1–20 ("Pl.'s Facts") ¶ 12. The average base hourly rate Defendant paid to registered nurses and surgical technicians working in California between May 3, 2013, and June 30,

---

[1] Plaintiff disputes that Defendant ceased its business operations and no longer employed any individuals, including Travelers, effective July 1, 2017. *See, e.g.*, Modify Opp'n at 7–9.

2017, was $23.13 per hour, ECF No. 71-1 at 26–37 ("Pl.'s Add'l Facts") ¶ 12, whereas the average pay rate for registered nurses in California was approximately $49 to $50 per hour. *Id.* ¶ 13.

Most of the assignments that Travelers worked for Defendant also were located 100 or more miles away from their permanent residences, Def.'s Facts ¶ 11, meaning Travelers incurred meal, incidental, and lodging expenses on behalf of Defendant associated with being away from home at their assignment location. *Id.* ¶ 12.

### B. Per Diem Stipends

Defendant provided Travelers per diems to reimburse meal, incidental, and lodging expenses incurred by Travelers working 100 or more miles away from their permanent residences. Def.'s Facts ¶ 13. If the Traveler qualified to receive a per diem, the Travel Assignment Confirmation set forth the amount of the per diem allowance. *Id.* ¶ 4.

Defendant used the localized per diem ("CONUS") rates set by the federal government through the General Services Administration ("GSA") and Internal Revenue Service ("IRS") to determine the maximum reasonable per diem for a given assignment. *Id.* ¶ 15. Consequently, the maximum per diem available to Travelers varied from assignment to assignment based on the applicable CONUS rates for the assignment location. *Id.* ¶ 16. When the per diem was below the CONUS rates by a certain level, Defendant would allow recruiters to reduce the hourly wage rate for a Traveler by a few dollars and increase the per diem rate accordingly, *id.* ¶ 6, so long as the per diem did not exceed the CONUS rate. *See id.* ¶ 17.

The average weekly per diem stipend Defendant paid to registered nurses and surgical technicians working in California between May 3, 2013, and June 30, 2017, was $960.45 per week. Pl.'s Add'l Facts ¶ 14. The full weekly per diem stipend consisted of seven days' worth of meal and incidental housing stipends. Pl.'s Facts ¶ 14. A Traveler did not need to submit any verification of expenses to receive the stipend, *id.* ¶ 36, and Defendant did not restrict how the per diem stipends could be used. *Id.* ¶ 37.

/ / /

In their Travel Assignment Confirmations, Travelers agreed to have a proportional adjustment, known as the Missed Shift Adjustment ("MSA"), applied to their per diems when they worked fewer than the minimum hours they agreed to work. Def.'s Facts ¶ 21. Prior to May 1, 2017, adjustments were made at a flat hourly rate for each hour that a traveler worked below her required minimum, *id.* ¶ 23, and Travelers assessed a MSA could earn back the deduction by making up any missed hours. Pl.'s Facts ¶ 23. Between January 5, 2015, and May 1, 2017, adjustments were made only if a Traveler missed more than two hours of work in a week, Def.'s Facts ¶ 24, whereas before January 5, 2015, adjustments were made whenever a Traveler fell below the minimum required hours for the week. *Id.* ¶ 25. After May 1, 2017, Defendant's policy changed to make proportional adjustments based on the number of shifts missed. *Id.* ¶ 26. Defendant calculated a Traveler's "minimum number of shifts" by dividing the total number of contracted hours in a week by the number of hours the Traveler was scheduled to work per shift. *Id.* ¶ 27. If, for example, a Traveler missed one of her three contracted shifts in a week, her per diem for the week would be adjusted by one-third. *Id.* ¶ 29. The MSA showed up as a separate line item on the Traveler's paystub. Pl.'s Facts ¶ 18.

The 2014 Advantage RN Recruiter Training manual describes Defendant's Pay Structure as the "Tax Advantage Program." ECF No. 63-4 at 77.[2] Under the Tax Advantage Program, a "Traveler receive[d] a Taxable hourly rate plus a weekly tax free Per Diem (stipend; reimbursement)," with "the end result [being] generally a higher weekly take home pay." *Id.* For example, a Traveler who was scheduled to work three twelve-hour shifts per week might take home $1260 per week under the Tax Advantage Program, consisting of a $20 per hour taxable wage plus a non-taxable $720 weekly per diem, while a "Fully Taxed" worker earning $37 per hour would take home only $999 per week for the same number of hours worked. *Id.* The manual also invited recruiters to explain the MSA

---

[2] Page citations to Plaintiff's Compendium of Evidence refer to the CM/ECF page numbers electronically stamped at the top of each page.

to Travelers on the basis that "[Advantage RN] c[ould] only bill the hospital for the hours [a Traveler] work[ed], in turn [Advantage RN] c[ould] only pay [a Traveler] for hours [he or she] actually work[ed]." *Id.* at 79.

When calculating a Traveler's "regular rate" for purposes of calculating overtime, Defendant did not include the value of the per diem stipend. Pl.'s Facts ¶ 44.

### C. Bonuses

Defendant also commonly paid Travelers one or more monetary bonuses, including "extension," "loyalty," and "completion" bonuses. Pl.'s Facts ¶ 45. An "extension" bonus was paid for extending an assignment, *id.* ¶ 46, a "loyalty" bonus for returning for a new assignment, *id.* ¶ 47, and a "completion" bonus for completing an assignment. *Id.* ¶ 48.

The specific dollar amount of each of these bonuses and the conditions under which they were to be paid were set forth in the Travel Assignment Confirmation. *Id.* ¶ 49. A Traveler was typically guaranteed a bonus if she satisfied the conditions for earning the bonus specified in the Travel Assignment Confirmation. *Id.* ¶ 50.

When calculating a Traveler's "regular rate" for purposes of calculating overtime, Defendant did not include the bonuses. Pl.'s Facts ¶ 51.

### D. Plaintiff Emily Howell's Employment with Defendant

From February 2016 through October 2016, Plaintiff worked an assignment for Defendant as a registered nurse in San Diego, California. Def.'s Facts ¶ 9. During this time, she maintained a permanent residence in Springfield, Massachusetts. *Id.* ¶ 10. Plaintiff testified at her deposition that it was her understanding that the per diems she received from Defendant were reimbursements for expenses she incurred while she was on assignment for Defendant. *Id.* ¶ 14.

Plaintiff's Earnings Statements, *see* ECF No. 56-1 at 114–54, indicate that her Earnings were broken out into "Regular" pay at a rate of $22.97 or $27.50 per hour,[3]

---

[3] Some statements also provide a second "Regular" rate of $57 or $62 per hour. *See* ECF No. 56-1 at 141, 151.

"Overtime" and "Worked Holiday" at a rate of $34.45 or $41.25 per hour,[4] "Premium Ot" at a rate of $45.94 per hour, various bonuses, and a "Per Diem" of up to $1072.00 per week that was explicitly "[e]xcluded from federal taxable wages," resulting in different "federal taxable wages" and "Gross Pay" amounts for each period.

## II.    Procedural Background

On May 1, 2017, Plaintiff filed a putative class action complaint for failure to pay overtime wages in violation of California Labor Code sections 510 and 1194, unfair business practices in violation of California Business and Professions Code sections 17200 *et seq.*, and waiting time penalties pursuant to California Labor Code section 203.  *See generally* ECF No. 1.  The operative First Amended Class Action Complaint ("FAC") was filed on July 10, 2017, adding additional claims for civil penalties pursuant to California Labor Code sections 2698 *et seq.* and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*  *See generally* ECF No. 13.

On December 15, 2017, Plaintiff moved to certify a California-wide class with respect to her state law claims for unpaid overtime, unlawful business practices, and waiting time penalties and for conditional certification of a nationwide FLSA collective action.  *See* ECF No. 21.  Following oral argument on July 12, 2018, *see* ECF No. 35, the Court granted Plaintiff's motion on July 17, 2018, certifying the following class:

> All non-exempt hourly health care professionals employed by Advantage RN in California from May 2, 2013 through the date of class certification who worked pursuant to a Traveler Assignment Confirmation, worked overtime, and had the value of the per diem stipend and/or loyalty, extension or completion bonus paid to them excluded from their regular rate for purposes of calculating overtime.

*See* ECF No. 38 at 19.  The Court also conditionally certified the following FLSA collective:

---

[4] Some statements also provide a second "Overtime" rate of $57 or $62 per hour.  *See, e.g.*, ECF No. 56-1 at 141, 151.

All non-exempt hourly health care professionals employed by Defendant Advantage RN LLC in the United States within three years prior to the date of certification who worked pursuant to a Traveler Assignment Confirmation, worked in excess of 40 hours in one or more workweeks, and had the value of the per diem stipend and/or loyalty, extension or completion bonus paid to them excluded from their regular rate for purposes of calculating overtime.

*See id.* at 19–20.

Defendant's Motion to Modify followed on March 25, 2019, *see generally* ECF No. 54, and Defendant's and Plaintiff's Motions for Summary Judgment followed on March 29, 2019, and April 19, 2019, respectively. *See* ECF Nos. 56, 63.

## MOTION TO MODIFY

## I.    Legal Standards

### A.    *Modification of Class Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C)*

A district court's order respecting class certification is "inherently tentative" prior to final judgment on the merits. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982); *see also* Fed. R. Civ. P. 23(c)(1)(C). Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Consequently, "courts retain discretion to revisit class certification throughout the legal proceedings, and may rescind, modify, or amend the class definition in light of subsequent developments in the litigation." *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 473–74 (S.D. Cal. 2015) (citing Fed. R. Civ. Proc. 23(c)(1)(C); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007)).

"Any amendment must, however, satisfy the requirements of Rule 23." *Peel v. Brooksam. Mortg. Corp.*, No. SACV1100079JLSRNBX, 2014 WL 12589317, at *3 (C.D. Cal. Nov. 13, 2014) (citing *Gen. Tel. Co. of Sw.*, 457 U.S. at 160); *accord Ms. L. v. U.S Immigration & Customs Enf't*, 330 F.R.D. 284, 287 (S.D. Cal. 2019) ("In considering the

appropriateness of [modification or] decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met.") (alteration in original) (quoting *Roy v. Cnty. of Los Angeles*, No. CV 13-04416-AB (FFMx), 2018 WL 3435417, at *2 (C.D. Cal. July 11, 2018) (quoting *Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008)) (citing *Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 210–11 (N.D. Cal. 2015); *Astiana v. Kashi Co.*, 295 F.R.D. 490, 492 (S.D. Cal. 2013)).

### B.    Modification of Collective Under the FLSA

The management of a collective action under the FLSA is "a subject of substantial judicial discretion." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018) (citing *GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1262 (9th Cir. 2011); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).  Following a grant of preliminary certification and after the close of relevant discovery, "[t]he employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* at 1109.  "Because of its purpose and timing, decertification can resemble a motion for partial summary judgment on the 'similarly situated' question, and may be combined with cross-motions for summary judgment." *Id.* at 1109–10 (citing *Sargent v. HG Staffing, LLC*, 171 F. Supp. 3d 1063, 1070 (D. Nev. 2016)).

But "[n]o clear authority exists on what standard a district court should apply to a motion to modify a conditionally certified class under the Fair Labor Standards Act." *Young v. Beard*, No. 2:11-CV-02491-KJM-AC, 2014 WL 66706, at *2 (E.D. Cal. Jan. 8, 2014).  "It is clear, however, that the standard applicable to initial conditional certification under the FLSA is more lenient than class certification under Rule 23." *Id.* (citing *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) ("The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure.")).

Consequently, some courts have applied "the standard for a motion for reconsideration of an interlocutory order." *Id.* (citing *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)).

## II. Analysis

Pursuant to Federal Rule of Civil Procedure 23(d), Defendant requests that the Court issue an order that:

> (1) modifies the end of the class and FLSA collective period to June 30, 2017[,] when Defendant ceased operating its business and employment of traveling healthcare professionals[;] and (2) permits Defendant to mail out notices to individuals who were erroneously notified of the class and collective action even though they were never employed by Defendants between May 12, 2013[,] and June 30, 2017[,] or at any time thereafter.

Mot. to Modify Not. at 1. Defendant notes that "[i]t makes no logical sense to include the July 1, 2017 through July 17, 2018 period during which Defendant did not employ anyone and did not operate the Advantage RN business." Mot. to Modify at 6–7. Further, "[w]hile a Rule 23(d) Notice to the[ 52 individuals who either opted into the FLSA collective and/or did not opt out of the Rule 23 class, but who were erroneously notified of the class and collective action in the first instance because they did not work for Defendant during May 12, 2013 through June 30, 2017 or anytime thereafter] is prophylactic, it is warranted in this case so that the interests of the properly included class and collective members are protected." *Id.* at 7.

In opposing the Motion to Modify, Plaintiff notes that Defendant allegedly ceased to employ class members "more than 200 days *before* [it] filed its opposition to class certification," and that its "failure to raise the argument when it should have does not constitute an unforeseen intervening change that would justify the Court exercising its discretion under Rule 23 to alter its initial certification order." Modify Opp'n at 2. Plaintiff further contends that the Motion to Modify "should be denied because it makes no legal or factual contention that the Rule 23 factors are no longer satisfied." *Id.* Further, "while Plaintiff disputes Advantage RN's contention that it did not employ class members after

June 30, 2017, the Court need not – indeed, should not – resolve that question now because it is a defense to the merits of Plaintiff's wage claims under the Labor Code." *Id.* at 3 (citing *Futrell v. Payday Cal., Inc.*, 190 Ca. App. 4th 1419 (2010)). Finally, "Advantage RN's motion is brought pursuant to . . . Rule . . . 23, which governs class actions" and "does not mention 29 U.S.C. § 216(b), which governs FLSA collective actions." *Id.* at 4. According to Plaintiff, Defendant "has not shown how [its] merits defense defeats the FLSA's 'similarly situated' requirement." *Id.*

On reply, Defendant counters that "[n]one of Plaintiff's cited authorities address whether modification of a certification order is appropriate when the class and/or collective period extends beyond the time members of the class or collective would meet other eligibility criteria for membership." Modify Reply at 2. But neither does Defendant cite any authority addressing the propriety of its requested modification, particularly under Rule 23(c)(1)(C) or Section 216(b). *See generally* Mot. to Modify; Modify Reply.

Although the Court agrees that it would make no logical sense to include in the class and collective actions a period during which Defendant had ceased to operate, Plaintiff disputes whether Defendant continued to employ members of the collective after June 30, 2017. *See* Modify Opp'n at 7–9. Further, the Court is troubled by the fact that the grounds for Defendant's requested modification were known to both Parties well before they briefed and argued the class certification and conditional certification issues but were not raised until March 2019.[5] *Compare* Mot. to Modify at 4 (indicating Plaintiff and her counsel were made aware that Defendant ceased operations as of June 30, 2017, no later than October 13, 2017), *with* ECF Nos. 21, 24, 25, 33–35, 38, 41–48. Accordingly, the Court **DENIES** Defendant's Motion to Modify.

---

[5] Regarding the FLSA collective, this is particularly problematic were the Court to apply the same standard as a motion for reconsideration, pursuant to which Defendant "may *not* . . . raise arguments or present evidence for the first time [that] . . . could reasonable have been raised earlier in the litigation." *See Young*, 2014 WL 66706, at *3 (emphasis in original) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000))).

# MOTIONS FOR SUMMARY JUDGMENT

## I.  Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact.  *Id.*  When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial.  *Celotex*, 477 U.S. at 324.  This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for

the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## II. Analysis

Plaintiff seeks partial summary judgment as to Defendant's liability for each of the five causes of action in her First Amended Complaint. Pl.'s MSJ Not., ECF No. 63, at 1. Defendant, on the other hand, seeks partial summary judgment against Plaintiff on her per diem-related claims in each of her causes of action. Defs.' MSJ Not. at 1.

Although the Court must construe the evidence most favorably to the non-moving party when determining each party's motion, *see Anderson*, 477 U.S. at 255, the Court addresses Plaintiff's and Defendant's Motions for Summary Judgment together by issue below.

### A. First and Fifth Causes of Action: Failure to Pay Overtime Wages

Plaintiff's first cause of action alleges that Defendant failed to pay overtime in violation of California Labor Code sections 510 and 1194 by failing to include in its regular rate of pay calculation the value of per diem stipends and various bonuses. *See* FAC ¶¶ 32–36; *see also id.* ¶ 18. Plaintiff's fifth cause of action is a collective action claim for violation of the FLSA premised upon the same alleged conduct. *See id.* ¶¶ 55–61.

Both the FLSA and California law require overtime be paid at one and one-half times the "regular rate." *See* 29 U.S.C. § 207(a)(1); Cal. Labor Code § 510(a). The FLSA defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee" subject only to certain specific enumerated statutory exclusions set forth in the Act.[6] 29 U.S.C. § 207(e). "Only the statutory exclusions are authorized." 29 C.F.R. § 778.200(c). As relevant here, Section 207(e) excludes from the regular rate of pay:

/ / /

---

[6] California law does not define "regular rate"; consequently, California courts look to the FLSA. *See Advanced-Tech Sec. Serv., Inc. v. Super. Ct.*, 163 Cal. App. 4th 700, 707 (2008); *Huntington Mem'l Hosp. v. Super. Ct.*, 131 Cal. App. 4th 893, 902 (2005).

. . . reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment; [and]

. . . Sums paid in recognition of services performed during a given period if either, . . . both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly[.]

29 U.S.C. § 207(e)(2)–(3).

The Ninth Circuit cautions that "[t]he FLSA is [to be] construed liberally in favor of employees." *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (quoting *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960))) (internal quotation marks omitted). The United States Supreme Court recently clarified, however, that the FLSA's exemptions are to be construed fairly rather than narrowly. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. ___, 138 S. Ct. 1134, 1142 (2018) (quoting A. Scalia & B. Garner, Reading Law, at 363 (2012)). Nonetheless, "[t]he employer bears the burden of establishing that it qualifies for an exemption under the Act." *Flores*, 824 F.3d at 897 (citing *Cleveland*, 420 F.3d at 988).

### 1. Per Diem Claims

Each Party seeks summary judgment in its own favor as to Defendant's liability for Plaintiff's first and fifth causes of action to the extent they are premised on Defendant's alleged failure to include per diem payments in the regular rate for purposes of calculating overtime. *See* Def.'s MSJ at 6–14; Pl.'s MSJ at 2–16. Essentially, Defendant contends that it properly excluded per diems from the regular rate because they were reasonable approximations of properly reimbursable expenses that Travelers incurred on behalf of Defendant, *see, e.g.*, Def.'s MSJ at 6–14, while Plaintiff argues that the per diems were improperly excluded from the regular rate because they functioned as compensation for hours worked. *See, e.g.*, Pl.'s MSJ at 6–16. Consequently, as in *Clarke v. AMN Services,*

*LLC*, "[t]he primary question is whether Defendant['s] reduction of the per diem amount when an employee worked less than his contracted hours per week changed the per diem payment from one based on reimbursement of expenses to one tied to hours worked," which must be included in the regular rate. *See* No. CV 16-4132 DSF (KSx), 2018 WL 3357467 (C.D. Cal. June 26, 2018); *see also, e.g.*, Def.'s MSJ at 2–3; Pl.'s MSJ at 1.

There is, however, no Ninth Circuit authority addressing this specific issue. *See* Def.'s MSJ at 6–7; *see also Junkersfeld v. Per Diem Staffing Sys., Inc.*, No. 4:18-CV-07795-KAW, 2019 WL 2247768, at *3 (N.D. Cal. May 24, 2019). Consequently, Defendant primarily relies upon decisions from other district courts within the Ninth Circuit, *see, e.g.*, Def.'s MSJ at 1–2 (discussing *Clarke*, 2018 WL 3357467); Def.'s Reply at 1 (discussing *Junkersfeld*, 2019 WL 2247768), while Plaintiff relies on administrative materials from the Department of Labor, *see, e.g.*, Pl.'s MSJ at 1, 13–14 (discussing Notice of Proposed Rulemaking, 84 Fed. Reg. 11888 (Mar. 29, 2019)), and decisions from other Circuit Courts of Appeal. *See, e.g., id.* at 10–14 (discussing *Baouch v. Werner Enters.*, 908 F.3d 1107 (8th Cir. 2018); *Sharp v. CGG Land (US), Inc.*, 840 F.3d 1211 (10th Cir. 2016); *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33 (1st Cir. 2014); *Gagnon v. United Technisource Inc.*, 607 F.3d 1036 (5th Cir. 2010)).

But each of the cited authorities is problematic. Plaintiff's cases are factually inapposite in material respects, *see* Def.'s Opp'n at 9–14, while the Department of Labor's March 29, 2019 Notice of Proposed Rulemaking may not be entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). *See Kisor v. Wilkie*, 588 U.S. ___, 139 S. Ct. 2400, 2417–18 (2019) (noting that *Auer* deference may be inappropriate where a new interpretation "creates 'unfair surprise' to regulated parties" by "'conflict[ing] with a prior' [agency construction]" or "impos[ing] retroactive liability on parties for longstanding conduct that the agency had never before addressed"). On the other hand, Defendant's primary case, while factually analogous, "'overlooked that . . . ['] Travelers remain away from home for the entirety of their assignment, and incur costs for food and housing, even if they do not work all scheduled shifts," meaning that, when the exemption is narrowly

construed, "reducing the per diem and housing payments based on the number of shifts worked inextricably ties the payments to the hours worked, rendering them part of the employee's regular rate." *See Junkersfeld*, 2019 WL 2247768, at *3.

The Parties agree that, under Ninth Circuit precedent, it is the "function" of the payments that is dispositive. *Compare* Def.'s MSJ at 7, *with* Pl.'s MSJ at 9–10. Here, it is undisputed that Defendant offered those Travelers on assignment more than 100 miles from their permanent tax home a weekly per diem stipend, *see, e.g.*, Def.'s Facts ¶ 4, and that most Travelers were contracted to work three twelve-hour shifts per week. *Id.* ¶ 8. Plaintiff, for example, was contracted to work three twelve-hour shifts per week for a thirteen-week assignment in San Diego, California, in 2016, *see id.* ¶ 9; *see also* ECF No. 56-1 at 44, during which time she maintained a permanent residence in Springfield, Massachusetts. *See* Def.'s Facts ¶ 10. During this time, Plaintiff was to be paid a $27.50 hourly base rate and a weekly per diem stipend of $1079.85, *see* ECF No. 56-1 at 44, whereas the average registered nurse in California earned approximately $49 to $50 per hour. *See* Pl.'s Add'l Facts ¶ 13. Defendant's recruiters were instructed to "sell" this system, which resulted in "generally a higher weekly take home pay," to Travelers. *See* ECF No. 63-4 at 77. Further, recruiters explained the MSA to Travelers on the basis that "[Advantage RN] c[ould] only bill the hospital for the hours [a Traveler] work[ed], in turn [Advantage RN] c[ould] only pay [a Traveler] for hours [he or she] actually work[ed]." *Id.* at 79. Nonetheless, Plaintiff herself understood that the per diems were to be reimbursements for expenses she incurred while on assignment for Defendant. *See* Def.'s Facts ¶ 14. While Plaintiff was employed by Defendant, however, her weekly per diem payment was subject to adjustment at a flat hourly rate for each hour she worked below her

/ / /

/ / /

/ / /

/ / /

/ / /

thirty-six-hour minimum were she to miss more than two hours of work in a given week.[7] *See id.* ¶¶ 23–24.

Defendant claims that these adjustments to the weekly per diem allowed it to better approximate expenses the Travelers incurred on its behalf, *see, e.g.*, Def.'s MSJ at 8, whereas Plaintiff contends that the adjustments reveal that the per diem payments actually function as remuneration for hours of employment. *See, e.g.*, Pl.'s MSJ at 14–16. Ultimately, however, the Court must agree with Plaintiff: that the per diem is paid weekly and adjusted based on hours or shifts worked makes the per diem function more as remuneration for hours worked than as reimbursement for expenses incurred on behalf of Defendant.

Several pieces of evidence bolster this conclusion. First, that Defendant trained its recruiters to "sell" the "Tax Advantage Program," which "result[ed in] generally a higher weekly take home pay" than a "Fully Taxed (perm rate or local rate)." *See* ECF No. 63-4 at 77; *see also Baouch*, 908 F.3d at 1118 (taking into consideration when concluding that per diem functioned as wages that the defendant "introduced the Payments as a means to attract new employees by maximizing take home pay").

Second, so long as the per diem was below the CONUS rate for the area in which the Traveler was assigned, recruiters could reduce the hourly wage rate and increase the per diem rate. *See* Pl.'s Facts ¶ 4; *see also Baouch*, 908 F.3d at 1111, 1116–18 (concluding that per diems from optional payment plan, in which drivers could elect "to receive more money in the form of take-home pay in their weekly paychecks" by opting to receive a lower taxable daily rate and non-taxable sums based on mileage for days driving away from home overnight, had to be included in regular rate).

/ / /

---

[7] Prior to January 5, 2015, adjustments were made whenever a Traveler fell below the minimum required hours for the week, *see* Def.'s Facts ¶ 25, whereas after May 1, 2017, Defendant began to make proportional adjustments based on the number of shifts missed, rather than hours missed. *Id.* ¶ 26. These differences in the MSA procedure do not alter the Court's analysis.

Third, although the Court recognizes that there may be some merit to Defendant's objections to that evidence, *see* Def.'s Opp'n at 13, it is striking that Defendant's average hourly wage and per diem stipend calculated per minimum required hour per week for members of the California class comes to $47.13 to $49.80 per hour, *see* Pl.'s Facts ¶ 43, whereas the average hourly rate for registered nurses in California was approximately $49 to $50 per hour. *See, e.g.*, *Baouch*, 908 F.3d at 1117–18 (concluding that per diem payments tied to miles driven were not properly excluded from the regular rate because, among other factors, "[t]he total pay—Payments plus applicable taxable wage—to both participating experienced and student drivers, alike, was suspiciously close to the taxable wage paid to non-participants"); *Gagnon*, 607 F.3d at 1041–42 (concluding that per diem was remuneration for employment where, among other things, "the combined 'straight time' and 'per diem' hourly rates approximately match the prevailing wage for aircraft painters").

Fourth, no matter how Defendant attempts to spin it, mathematically speaking, the amount of the per diem does vary depending on the hours each eligible Traveler works per week. *See* Def.'s Facts ¶¶ 21–29; *see also Gagnon*, 607 F.3d at 1041–42 ("[W]e can conceive of no reason why a legitimate per diem would vary by the hour and be capped at the forty-hour mark, which not-so-coincidentally corresponds to the point at which regular wages stop and the overtime rate applies.") (footnote omitted).

Fifth, there is no apparent nexus between the expenses incurred and the per diem payments. Plaintiff, for example, worked a thirteen-week assignment in San Diego, California, working a minimum of three, twelve-hour shifts per week, all the while maintaining a residence in Massachusetts. On weeks she worked her three requisite shifts, she was paid the weekly per diem in full. On weeks that she missed more than two hours of her thirty-six-hour minimum, Defendant deducted a proportionate amount of her weekly per diem. For example, if Plaintiff missed one twelve-hour shift, her weekly per diem would be reduced by approximately one-third. Even if it could be said that Plaintiff did not incur living costs on behalf of Defendant for that one, twelve-hour shift, she arguably

still spent the remaining 156 hours of that week incurring the additional costs of living in San Diego, California, on behalf of Defendant. *See Junkersfeld*, 2019 WL 2247768, at *3; *see also Gagnon*, 607 F.3d at 1042 n.7 ("[I]f [the plaintiff] worked fewer than forty hours per week, his per diem, based on the terms of his contract, would be lower than $500 per week, even though his living expenses would almost certainly not change. Given this and the dearth of evidence connecting [the plaintiff]'s per diem amount to his actual expenses, we, like the district court, 'cannot conclude, from the evidence presented, that [the plaintiff]'s per diem allowance was reasonably approximate to his actual expenses.'"). This distinguishes the per diem at issue here from those found in the vast majority of Defendant's cases, in which the per diem was paid not per week but per working day or per shift worked, *cf. Sharp v. CGG Land (U.S.) Inc.*, 141 F. Supp. 3d 1169, 1170 (N.D. Okla. 2015) (concluding that per diem paid "[f]or every day that [the plaintiff] worked" was properly excluded from his regular rate), *aff'd*, 840 F.3d 1211; *Mundell v. DBA/DMC Mining Servs. Corp.*, No. 4:12-CV-2614, 2014 WL 7911147, at *2 (M.D. Pa. Apr. 2, 2014) (dismissing claims related to per diem where the plaintiff "was paid a per diem of $75.00 per day, or $975.00 every two weeks for thirteen working days"); *Acton v. City of Columbia*, No. 03-4159-CV-NKL, 2004 WL 2152297, at *1, *6–7 (W.D. Mo. Sept. 10, 2004) (dismissing claims related to meal allowance of $12 per 24-hour shift worked), with the exception of *Clarke*, which did not address this issue. *See Junkersfeld*, 2019 WL 2247768, at *3.

Finally, and perhaps most tellingly, Defendant itself appears to have considered the per diems to function more as remuneration than as a true per diem. Defendant instructed its recruiters to tout how the "Tax Advantage Program" resulted in "generally a higher weekly take home pay," to Travelers. *See* ECF No. 63-4 at 77. Further, Defendant itself noted that the MSA existed because Defendant "c[ould] only pay [a Traveler] for *hours [he or she] actually work[ed]*." *Id.* at 79 (emphasis added).

Coupled with the burden of proof, these undisputed facts compel the conclusion that Defendant's per diem functioned as remuneration for hours worked. Ultimately, the

17-CV-883 JLS (BLM)

burden is on Defendant to establish that its per diem payments fall within the exemption for traveling expenses. *See Flores*, 824 F.3d at 897. Because Defendant has failed to do so, the benefit of the doubt goes to Plaintiff. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment and **GRANTS** Plaintiff's Motion for Summary Judgment as to her first and fifth causes of action to the extent they are predicated on Defendant's failure to include per diem payments in Travelers' regular rate.

### 2. *Bonus Claims*

Plaintiff additionally seeks summary judgment as to her first and fifth causes of action to the extent they are premised on Defendant's alleged failure to include various bonuses in the regular rate for purposes of calculating overtime. *See* Pl.'s MSJ at 16–17. Defendant does dispute liability, only that it "is entitled to an offset with respect to the FLSA collective." *See* Def.'s MSJ Opp'n at 2.

Under the FLSA, "[s]ums paid in recognition of services performed during a given period if . . . both the fact that the payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promises causing the employee to expect such payments regularly" may be excluded from the employee's "regular rate." *See* 29 U.S.C. § 207(e)(3)(a). "[F]or a bonus to qualify for exclusion as a discretionary bonus . . . [,] the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." 29 C.F.R. § 778.211(b). Consequently, "[t]he sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement" and "[t]he employee has no contract right, express or implied, to any amount." *Id.* "If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it." *Id.* "[A]ny bonus which is promised to employees upon hiring . . . [, b]onuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm . . . [, a]ttendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in

employment until the time the payment is to be made . . . must be included in the regular rate of pay." 29 C.F.R. § 778.211(c).

Here, it is undisputed that Defendant excluded from Travelers' "regular rate" extension, loyalty, and completion bonuses, for which the dollar amounts and conditions for payment were set forth in the Travel Assignment Confirmations signed by the Travelers at the outset of each assignment. *See* Pl.'s Facts ¶¶ 45–51. Plaintiff's Travel Assignment Confirmation, for example, provided that she would "receive $50 extension bonus when 4–7 week extension is completed" and that she would be "eligible to receive $152.00 Loyalty Bonus . . . at minimum of 2 weeks into an assignment and JCAHO file is 100% compliant," which would be deducted from her last check if she did not complete the four-week contracted agreement. ECF No. 63-4 at 118. Further, Plaintiff was to "receive additional $150 Completion Bonus after 4 weeks contract." *Id.*

Because Defendant promised these bonuses in advance and pursuant to a written contract, it "abandoned [it]s discretion with regard to [them]." *See* 29 C.F.R. § 778.211(b). Such non-discretionary bonuses made pursuant to a prior written contract cannot lawfully be excluded from the employee's regular rate. *See* 29 U.S.C. § 207(e)(3)(a). The Court therefore **GRANTS** Plaintiff's Motion for Summary Judgment as to her first and fifth causes of action to the extent they are predicated on these bonus payments.

> *3. Liquidated Damages and Statute of Limitations Under the FLSA*

Finally, Plaintiff seeks summary judgment that it is entitled to double liquidated damages under the FLSA for unpaid overtime compensation as well as extension of the statute of limitations to three years. *See* Pl.'s MSJ at 18–19.

> a.    Liquidated Damages

Under the FLSA, "[a]ny employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount . . . their unpaid overtime compensation . . . , and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages are remedial, not punitive, because they compensate employees for losses they may have suffered by not receiving their wages

on time." *Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1265 (D. Or. 2014) (citing *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008)). Consequently, "[d]ouble damages are the norm; single damages are the exception." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) (citing *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003)). In fact, "[l]iquidated damages are 'mandatory' unless the employer can overcome the 'difficult' burden of proving both subjective 'good faith' and objectively 'reasonable grounds' for believing that it was not violating the FLSA." *Id.* (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909–10 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005)); *see also* 29 U.S.C. § 260 ("[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216.").

Plaintiff claims that the FLSA collective is entitled to liquidated damages as a matter of law because "[t]here is no evidence in the record that Advantage RN had an honest intention to ascertain and follow the dictates of FLSA[, n]or did Advantage RN have reasonable grounds for believing that it need not include the value of the monetary bonuses and per diem payments in the regular rate." Pl.'s MSJ at 18. Defendant counters that Plaintiff's liquidated damages argument is premature "because Plaintiff has moved for summary judgment only as to liability, not damages." Def.'s MSJ Opp'n at 16. On reply, Plaintiff rejoins that she "is seeking a partial summary judgment ruling that Advantage RN is *liable* for liquidated damages," Pl.'s MSJ Reply at 4, and "[b]ecause Advantage RN has not even attempted to meet its burden in opposition to Plaintiff's motion, Advantage RN is liable as a matter of law for liquidated damages if the Court finds for Plaintiff on the FLSA overtime claim." *Id.* at 5.

Plaintiff is correct that Defendant has not attempted to introduce any evidence of its subjective good faith and, "[w]here the employer 'fails to carry that burden,' . . . 'liquidated

damages are mandatory.'" *Alvarez*, 339 F.3d at 910 (quoting *Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996)). Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to liquidated damages under the FLSA. *See, e.g.*, *Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 923 (N.D. Cal. 2014) (finding on summary judgment that the plaintiff was entitled to recover liquidated damages where the defendants "did not proffer any evidence establishing that they had an honest intention to ascertain and follow the dictates of the FLSA, and that they had objectively reasonable grounds for believing that their conduct complied with the FLSA"); *Nellis v. G.R. Herberger Revocable Tr.*, 360 F. Supp. 2d 1033, 1045 (D. Ariz. 2005) ("Having failed to produce evidence of an honest intention to comply with the FLSA, the [defendant] fails to establish a triable issue of fact as to liquidated damages.").

### b. Statute of Limitations

"Successful FLSA plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action." *Haro*, 745 F.3d at 1258 (citing 29 U.S.C. § 255(a)). "When a violation is 'willful,' however, the statute of limitations extends to three years." *Id.* (citing 29 U.S.C. § 255(a)). "To show willfulness, a plaintiff must demonstrate that the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "An employer who knows of a risk that its conduct is contrary to law, yet disregards that risk, acts willfully." *Id.* (citing *Alvarez*, 339 F.3d at 908–09).

Plaintiff claims that the two-year statute of limitations for the FLSA claims should be extended to three years because Defendant's violations of the FLSA were "willful." *See* Pl.'s MSJ at 19. Specifically, Plaintiff contends, "Advantage RN is aware of the substantial body of case law and statutory authority, discussed above, holding that (1) nondiscretionary bonuses are part of the regular rate and (2) reimbursement payments based on hours worked must be included in the regular rate[; y]et, despite this knowledge, Advantage RN has continued to exclude the bonuses and per diem payments from the regular rate." *Id.*

Defendant counters that the burden to establish its willfulness is on Plaintiff, *see* Def.'s MSJ Opp'n at 16 (citing *Haro*, 745 F.3d at 1250), but "Plaintiff cites no evidence in support of her position, instead simply making the conclusory assertion that 'Advantage RN is aware of the substantial body of case law and statutory authority, discussed above.'" *Id.* (quoting Pl.'s MSJ at 19). Defendant adds that, "[a]s evidenced by Judge Fischer's decision in *Clarke* upholding a similar per diem policy, there is no reason to believe Advantage RN's policy is unlawful and it need not have changed its policy in response to out-of-circuit, factually inapplicable decisions." *Id.*

Plaintiff responds that, "[b]y seeking shelter in a single district court decision and choosing to ignore the great weight of contrary authority, Advantage RN has disregarded the very possibility that its conduct violated the statute." Pl.'s MSJ Reply at 6. "'Ignoring these red flags and failing to make an effort' to assure compliance 'show willfulness.'" *Id.* (quoting *Haro*, 745 F.3d at 1258).

Here, the only evidence presented to the Court by either party concerning Defendant's willfulness (or lack thereof) is the very court opinions cited to establish Defendant's liability under the FLSA. Although it is clear under existing precedent that Defendant's failure to include non-discretionary bonuses in the regular rate was unlawful, *see supra* Section II.A.2, the question concerning Defendant's per diem policy is a closer call. Accordingly, on the current record, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment as to the statute of limitations under the FLSA. Specifically, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to her bonus claims and **DENIES** it as to her per diem claims.

### B.  Second Cause of Action:  Unfair Business Practices

Section 17200 prohibits the use of an "unlawful . . . business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff's second cause of action alleges that Defendant violated California Business and Professions Code sections 17200 *et seq.* by virtue of violating California Labor Code section 510. *See* FAC ¶ 39.

/ / /

The Parties agree that the Court's determination of Defendant's liability under Section 510 is determinative of Defendant's liability under Section 17200. *See* Def.'s MSJ at 15; Pl.'s MSJ at 19–20; *see also Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206 (2011) ("[T]he failure to pay legally required overtime compensation falls within the UCL's definition of an 'unlawful . . . business act or practice.'"). Because the Court concludes that there exist no genuine disputes of material fact Defendant violated Section 510, *see supra* Section II.A, the Court also concludes that there exist no genuine disputes of material fact that Defendant violated Section 17200. *See, e.g.*, *Robinson v. Open Top Sightseeing San Francisco, LLC*, No. 14-CV-00852-PJH, 2017 WL 2265464, at *10 (N.D. Cal. May 24, 2017) (granting summary judgment in favor of plaintiffs on FLSA overtime and derivative UCL claims). Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment and **GRANTS** Plaintiff's Motion for Summary Judgment as to her second cause of action.

## C.     Third Cause of Action: Waiting Time Penalties

In her third cause of action, Plaintiff seeks waiting time penalties because Defendant allegedly willfully failed to pay all overtime owing at time of termination. *See* FAC ¶¶ 43–48. "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). "If an employer willfully fails to pay . . . in accordance with Section[] 201 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

The dispositive question here is whether Plaintiff has established that there exist no genuine issues of material fact that Defendant "willfully fail[ed] to pay" the unpaid overtime wages stemming from failure to include per diems and bonuses in the regular rate. Plaintiff contends that "[t]he settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done." Pl.'s MSJ at 20 (quoting *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157,

1201 (2008)). Because "[i]t is undisputed that Advantage RN deliberately adopted and implemented a companywide policy of excluding the per diems and bonuses from the regular rate . . . , as a matter of law Advantage RN is liable for waiting time penalties." *Id.* at 21.

Plaintiff advocates too broad a construction of the term "willfully." "As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done." *Chiu v. Citrix Sys., Inc.*, No. SA CV 11-1121 DOC, 2011 WL 6018278, at *4 (C.D. Cal. Nov. 23, 2011) (citing *Barnhill v. Saunders & Co.*, 125 Cal. App. 3d 1, 10 (1981)). Consequently, "to be at fault within the meaning of the statute, the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." *Barnhill*, 125 Cal. App. 3d at 7. "However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. tit. 8, § 13520. "A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." Cal. Code Regs. tit. 8, § 13520(a); *see also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1202 (2008) (affirming that violations were not willful where defendants "raised complicated issues of first-impression," even though those arguments were ultimately rejected); *Barnhill*, 125 Cal. App. 3d at 8–9 (reversing summary judgment imposing waiting time penalties against employer who set off employee's debt to employer against wages given uncertainty in law where "several courts of appeal had expressed the view that setoffs against employees' wages were proper").

Defendant urges that its "good faith, reasonable belief that its actions were not a violation of the law, make waiting time penalties unavailable as a matter of law." Def.'s MSJ at 16 (citing 8 Cal. Code Regs. § 13520(a); *Zimmerman v. Comcast Corp.*, No. 2:15-cv-08224-ODW (SSx), 2016 WL 6892134, at *9 (C.D. Cal. Nov. 22, 2016)). Neither Party, however, has introduced any evidence as to Defendant's willfulness or good faith

/ / /

aside from the state of the law concerning inclusion of non-discretionary bonuses and per diems in the regular rate pursuant to the FLSA.[8]  *See, e.g.*, Pl.'s MSJ at 19.

As with Plaintiff's argument concerning the statute of limitations under the FLSA, *see supra* Section II.A.3.b, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment as to Plaintiff's third cause of action. Specifically, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to waiting time penalties as to her bonus claims and **DENIES** her Motion as to waiting time penalties as to her per diem claims.  Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's third cause of action.

### D.     *Fourth Cause of Action:  Civil Penalties*

Finally, Plaintiff's fourth cause of action seeks to collect civil penalties for Defendant's alleged violations of the California Labor Code pursuant to California Labor Code section 558 and attorneys' fees and costs pursuant to the Private Attorneys General Act ("PAGA"), California Labor Code §§ 2698 *et seq.*  *See* FAC ¶¶ 49–54.  Pursuant to Section 558, "[a]ny employer . . . who violates, or causes to be violated, a section of this chapter . . . shall be subject to a civil penalty" of $50 for each underpaid employee per period for any initial violation and $100 for each underpaid employee for each underpaid employee per period for each subsequent violation.  *See* Cal. Lab. Code § 558(a)(1)–(2); *see also* Cal. Lab. Code §§ 2699(f), 2699.3.  "Any employee who prevails . . . shall be entitled to an aware of reasonable attorney's fees and costs."  Cal. Lab. Code § 2699(g)(1).

Again, the Parties agree that the Court's determination of Defendant's liability under Section 510 is determinative of Defendant's liability under Sections 201 and 203.  *See* Def.'s MSJ at 16–17; Pl.'s MSJ at 21–22; *see also Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 580 (2010) ("[A] failure to pay overtime compensation (§ 510) is subject to the civil penalty provided in section 558.").  Because the Court concludes that there exist

---

[8] To the extent Defendant urges that its efforts to comply with the IRS's "accountable plan" requirements support its "good faith" under the FLSA, *see, e.g.*, Def.'s MSJ at 9, the Court concludes that argument is unavailing.

no genuine disputes of material fact Defendant violated Section 510, *see supra* Section II.A, the Court also concludes that there exist no genuine disputes of material fact that Defendant violated Section 558.  Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment and **GRANTS** Plaintiff's Motion for Summary Judgment as to her fourth cause of action.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion to Modify (ECF No. 54), **DENIES** Defendant's Motion for Summary Judgment (ECF No. 56), and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 63) as outlined above.  The Parties **SHALL FILE** a joint status report within seven (7) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated:  August 16, 2019

Hon. Janis L. Sammartino
United States District Judge